Kipp *v.* Merselis.

## RICHARD P. KIPP

*v.*

## JANE MERSELIS and others.

In 1856, Jacob Merselis bought a tract of land, consisting of a stone house and vacant lot, subject to Kipp's mortgage on the whole premises; in 1859, he and his wife, Jane, executed a mortgage to Lum on the whole tract; in 1867, Jacob, for a valuable consideration, conveyed the vacant lot to Jane; in 1870, he gave a mortgage on the stone

Kipp v. Merselis.

house to Mandeville; and in 1873 he gave one on the stone house to Steele; in 1872, judgments were recovered against Jacob, under which his interest in the whole tract was purchased by Jane, who made the purchase at Steele's request, *ex benevolentia*, to protect his mortgage, and accordingly and for that purpose alone (the protection of his mortgage debt on the mortgaged premises), in 1873, Jacob and Jane gave a new mortgage on the stone house to Steele, in lieu of his old one; and, afterwards, they gave one to Kimble (now Hamilton's) on the vacant lot.—*Held*, that Steele has no equity, as against Jane and Hamilton, to require Kipp and Lum to have recourse to the vacant lot, before resorting to the stone house, in order to satisfy their mortgages.

Bill to foreclose. On final hearing on pleadings and proofs.

*Mr. R. I. Hopper*, for complainant.

*Mr. G. S. Hilton*, for Mrs. Merselis.

*Mr. A. B. Woodruff*, for Hamilton.

*Mr. J. C. Paulison*, for Steele.

THE CHANCELLOR.

The only question submitted on the hearing was, as to the equities claimed for Steele's and Hamilton's respective mortgages and the equity claimed for Mrs. Merselis in protection of the property covered by the latter mortgage, against the respective mortgages of the complainant and Lum.

The complainant's mortgage was given January 27th, 1855, by Hausman De Baun and his wife, upon a lot of land in Market street, in Paterson. On the front of part of it there then was, and still is, a stone house. The rest of the lot was vacant. Subsequently, January 16th, 1856, De Baun sold and conveyed the property to Jacob Merselis. After the making of that conveyance, and on June 1st, 1859, Merselis gave a mortgage on the same property to

John Lum. On April 23d, 1867, he conveyed part of the property (the part known as No. 39 Market street, and which was vacant) in fee to Daniel H. Winfield, for the consideration, as expressed in the deed, of $2,000; but, really, only to the end that he should convey it to Jane Merselis, the wife of the grantor; and Winfield, by deed dated the next day (April 24th, 1867), conveyed it in fee to Mrs. Merselis, by deed expressing a consideration of $2,000. Those deeds both contained the usual full covenants, including covenant against encumbrances and covenant of general warranty. It appears, by the evidence, that they were not voluntary, but upon valuable and sufficient consideration, which was money received by Merselis from the sale of his wife's separate estate, inherited from her father. On November 1st, 1870, Merselis (he then owned only the new stone house lot) gave a mortgage on that lot to Jane Mandeville, and, January 14th, 1873, he gave one on that lot to John Steele.

Between the times of giving the Mandeville and Steele mortgages, judgments were, in July, 1872, recovered against Merselis (some in the supreme court and some in the circuit court of Passaic county) to the amount of about $8,600. Under executions issued upon them, the sheriff of that county sold land as the property of Merselis, and at the same time sold, also, his right, title and interest in both lots of the De Baun property. Mrs. Merselis bought her husband's interest in those lots, at the sheriff's sale, for $2,500. The deed from the sheriff to her is dated December 21st, 1872. On January 14th, 1873, she and her husband gave a mortgage to Steele on the stone house lot, which was recorded February 13th, 1873. On May 1st, 1873, they gave one to Henry Kimble (now held by Henry Hamilton) on the other lot, for $2,000 of the money due to him for building a frame dwelling-house on that lot.

Steele insists that, inasmuch as Mrs. Merselis was, when she gave him his mortgage (the mortgage of 1873), the owner of both lots, he is, in equity, entitled to have the frame house lot sold to pay the mortgages of the complain-

ant and Lum (each of which is on both lots), before recourse
is had to the stone house lot; and that neither she nor
Hamilton (who claims under her) can set up against him her
equity under the conveyance by her husband, through Win-
field, to her. Hamilton and Mrs. Merselis, on the other
hand, resist this claim, and insist that Hamilton is, in equity,
entitled to have the stone house lot sold for the satisfaction
of the mortgages of the complainant and Lum, before
recourse is had to the frame house lot.

It appears that the Steele mortgage of January 14th,
1873, was given in substitution of the former one (of June
26th, 1872), which was cut off by the sale under the judg-
ments, the liens of which were prior to the lien of that
mortgage. The debt which the mortgage of June 26th,
1872, was given to secure was the debt of Merselis, and not
of his wife. She bought the stone house property, on
which that mortgage was, at the sheriff's sale, merely to
save the security of Steele under that mortgage. She testi-
fies that Steele asked her to buy the property in order thus
to protect his security, and she promised him that she would
do so, and gave instructions, accordingly, to have the prop-
erty bought in for her at the sheriff's sale. After she
bought the property, she, although she appears to have been
under no obligation to do so, merely at Steele's request,
gave him a new mortgage (the mortgage of January 14th,
1873), for the same amount, and in place of that of 1872.
She swears that she never owed Steele anything, and that,
if it had not been for her promise to him, she would not
have given nearly so much as she did for the property at
the sheriff's sale.

In his answer, Steele, though he refers to the mortgage
of 1872, makes no claim under it, and does not state what
the consideration of the subsequent mortgage was. He
merely says, on that point, that Jacob and Jane Merselis,
having become indebted to him, gave him their bond and
the mortgage of 1873. Though his counsel was notified to
produce the bond given in 1872 (he himself resides out of

Kipp v. Merselis.

this state), it was not produced.   Steele was not sworn as a witness in the cause.   Merselis testifies that that bond was not signed by his wife.   There does not appear to have been any reason why Mrs. Merselis should have purchased the stone house lot at the sheriff's sale, except to redeem her promise to Steele; for it is alleged, on behalf of Steele himself, that the amount due on the mortgages upon it exceeds its value.   In order to purchase her husband's interest in the stone house lot, it was necessary to bid for his interest in the frame house lot also; for the sale was not of his interest in each lot separately, but of his interest in the whole property.   He had no interest in the frame house lot.   The money paid by her to the sheriff for all the property sold was but a few hundred dollars more than the amount of the judgments which were a lien upon the stone house lot prior to Steele's mortgage.   When the frame house lot was conveyed to her, in 1867, there were but two mortgages on the whole property, the complainant's and Lum's, and she had an equity to have the stone house lot, which her husband then owned, first sold to pay them, before recourse to her lot.   The Mandeville mortgage was on the stone house lot alone, and was given after the deed to her for the other lot had been recorded; and so, too, of the Steele mortgage.   She had no need to buy the frame house lot at the sheriff's sale, for, as already stated, she had title to it, by conveyance, long prior to the recovery of the judgments.   To hold, under the circumstances, that she, by reason of her having purchased the property at the sheriff's sale, has, as between her and Steele, or even as between her and Mandeville, forfeited her previous equity as owner of the frame house lot, would in no respect be equitable, but the very reverse.

Steele insists that the record of his mortgage was notice to Kimble of his equity.   To this it is a sufficient answer to say that Steele has no equity as against the frame house lot in the hands of Mrs. Merselis or her grantee or mortgagee. To protect Steele's mortgage security, she, at a cost of

$2,500, purchased the stone house lot. Had she given no new mortgage, the claim now made by him would, of course, not have been made, for his security would, in that case, have been irretrievably gone. He is indebted to her generosity for his mortgage. Because she, at his request, and merely for his benefit, voluntarily and without any manner of consideration, executed a new mortgage in his favor, he now insists that he has an equity to deprive her of her property to pay his mortgage debt. His claim is not only utterly devoid of equity, but to allow it would be to perpetrate most palpable injustice.